Leslie E. BROWN, Individually and as Next Friend of Norman Brown, a Minor,

v.

PANHANDLE & SANTA FE RAILWAY COMPANY.

No. 6619.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 24, 1956.

Rehearing Denied Oct. 29, 1956.

John J. Watts, Odessa, and C. Ransom Samuelson, Long Beach, Cal., for appellants.

Lewis Jeffrey, Amarillo, and McWhorter, Cobb & Johnson, Lubbock, for appellee.

PITTS, Chief Justice.

This is an appeal from the trial of a damage suit in which judgment was rendered for the defendant upon a jury verdict. Appellant, Leslie E. Brown, filed suit individually and as next friend of his minor son, Norman Brown, against appellee, Panhandle & Santa Fe Railway Company, seeking damages in the total sum of $421,000 as a result of alleged injuries received by Norman Brown on April 14, 1952, in the Santa Fe Railway yards at Slaton, Texas, by reason of a moving freight train. As a result of jury findings convicting Norman Brown of contributory negligence on the occasion in question and probably for other reasons, the trial court rendered a "take nothing" judgment against appellants and for appellee from which judgment an appeal has been perfected.

The record reveals that Norman Brown was born on June 15, 1937, and that at the time of the alleged accident he was a little less than 14 years and 10 months of age, was healthy and weighed 183 pounds; that he was strong, of the athletic type and enjoyed engaging in all athletic sports at school; that he was in the 8th grade at school, had a mechanical mind and kept and read mechanical books at his home; that he was the leader of the group of boys with whom he was associated and particularly those companions with him on the occasion in question and that he did most of the talking for the group; that at the time of his injuries his residence was with his parents in Wilmington, Los Angeles County, California; that a couple of days prior to receiving his injuries, he and two other neighboring boys approximately his age namely Ronald Kalvin and Allen Wearing, left Wilmington, California, travelling in an automobile belonging to Mr. and Mrs. Leslie E. Brown, Norman Brown's parents, without the knowledge or consent of his parents, en route to the State of Arkansas to visit Norman Brown's grandfather; that while traveling fast at night time, near San Diego, California, with Norman Brown driving, their automobile hit a traffic island

and rolled over several times, thus completely demolishing their automobile but not injuring any of the boys; that Norman Brown did not call his parents and advise them of his wreck but left the demolished automobile of his parents where it was wrecked and proceeded on his way; that the three boys hitch hiked thereafter to Midland, Texas, where a colored boy, Herman King, while driving an automobile, picked up the three boys and drove them to his home town of Slaton, Texas, where the three boys went to appellee's railroad yards for the purpose of catching a freight train traveling east toward Dallas, Texas, and while there Norman Brown received his injuries while crawling under a freight train which began moving and threw him underneath its wheels as a result of which he had a leg and an arm cut off. On the occasion in question, the weather was fair and the vision of the said boys was clear as they entered appellee's switch yard where there were many railroad tracks covered by numerous freight cars and switching operations were going on in and out of the roundhouse and about the yards as the three boys, before the accident occurred, sought to find a train to ride.

The parties joined issues upon allegations of negligence of appellee's employees and of Norman Brown at the time and place of the alleged accident, and appellants sought to invoke the law of discovered peril but the jury found against appellants on all answered issues seeking to apply the law of discovered peril by finding in effect that none of appellee's employees or agents discovered Norman Brown in a perilous position at any time and particularly immediately prior to the alleged injuries received. The jury exonerated appellee's employees of several charges of negligence but convicted employee C. T. Washington of several acts of negligence in that he, by the exercise of ordinary care, should have known that Norman Brown was about to enter appellee's switch yards and failed to warn him of the dangers of being in the switching yards on the occasion in question,

which failure was a proximate cause of Norman Brown's injuries. The jury likewise convicted Norman Brown of three separate negative acts of negligence, each of which was further found to be a proximate cause of his injuries and damages claimed, namely that at the time and place in question Norman Brown failed to exercise that degree of care which would have been exercised by boys of his age, experience and intelligence under the same or similar circumstances when he crawled under appellee's train in question; that he failed to use the care for his own safety such as would have been used by boys of his age, experience and intelligence under the circumstances as they existed at the time of and just prior to the occasion of the accident; and that he failed to keep a proper lookout for switching movements in and upon appellee's tracks in the switching yards just before and at the time he crawled under appellee's freight train. The jury further found that Norman Brown was not advised by any of appellee's switchmen that he could catch a ride upon any of appellee's freight trains running out of the switching yards; that he was not an invitee or trespasser upon appellee's premises but that he was a licensee and was not upon appellee's premises for the purpose of stealing a ride upon one of appellee's trains. The terms "licensee," "invitee," "trespasser" and "stealing a ride" were defined by the trial court. The jury found that it was not an unavoidable accident.

 Appellants contend that the evidence was insufficient to support the jury findings convicting Norman Brown of the three separate negative acts of contributory negligence and they raised some question about the form of submission of these issues. When we apply the rules of law governing the question of sufficiency of the evidence, there is an abundance of evidence to support the jury findings convicting Norman Brown of contributory negligence. We find no fault with the form of submission of these issues by the trial court and appellants are in no position to complain

about such form of submission in any event because of their failure to object to or complain about the submission of them or the form thereof to the trial court before they were submitted.

■■ In any event, we believe the trial court met the requirements of the law when it used the accepted standard for inquiring about the conduct of a child the age of Norman Brown, who, according to the evidence, was a normal child if not above the average, by inquiring if he "failed to exercise that degree of care which would have been exercised by boys of his age, experience and intelligence under the same or similar circumstances" when he crawled under appellee's train in question and received as a result thereof his injuries. When the jury found upon competent evidence that he did so fail and that such failure was a proximate cause of his injuries and damages, appellants and this Court are bound thereby, and we are also bound by the other jury findings of Norman Brown's contributory negligence. We believe such a standard of submission, or one substantially the same, was approved by the Supreme Court in the recent case of Dallas Ry. & Terminal Co. v. Rogers, 147 Tex. 617, 218 S.W.2d 456.

■ Appellants also seek to find some sort of relief from the jury's findings on the question of discovered peril but we have failed to find any grounds for any comfort to appellants as a result of the jury's answers given to the discovered peril issues because they were all answered against appellants to the effect that none of appellee's employees saw Norman Brown in a position of peril and the evidence supports such findings.

■ Appellants also seek to find comfort by reason of the jury finding to the effect that Norman Brown was not aware of the danger and risk he was taking in crawling under the train in question on the occasion of his injuries received. But the jury had already found repeatedly in ef-

fect that Norman Brown failed to exercise that degree of care a boy of his age should have exercised and that such failure was a proximate cause of his injuries and damages. It is not a question of whether or not Norman Brown was aware of the existing danger and risk but it is a question of whether or not he could and should have been aware of the danger and risk he assumed in crawling under a train in the switching yards covered by many tracks with numerous railroad cars standing thereon and switching operations in process all before his plain vision while he and his companions selected the route they took through the switching yards and the means they planned to use to board the train they expected to ride out toward Dallas, Texas.

■ In the case of Luck v. Buffalo Lakes, Tex.Civ.App., 144 S.W.2d 672, plaintiff's son, a 17 year old boy, drowned in defendant's lake. In connection with the contributory negligence issues, the jury there found that the deceased did not knowingly go into the water to such a depth that he was in danger of drowning nor knowingly wade out into the water too deep for one not able to swim; that he did not wade out to where he knew he would lose his footing and that he did not go to a dangerous depth knowing the danger thereof, but the jury likewise found that the deceased was guilty of entering water to the depth he did when he could not swim and that such negligence contributed to his death. Although the boy in that case did not knowingly expose himself to danger, he negligently did so, for which reason no damages were awarded to his survivors and this Court affirmed the trial court's judgment. So it is in the case at bar. Although the jury found that Norman Brown was not aware of the danger and risk, it further found that he should have been aware of such under the circumstances with a switching yard full of visible train cars and switching operations going on about him and his companions. There is no pleading or proof that Norman Brown was not a normal boy or that he was afflicted

with mental incapacity, in which event it must be presumed that he was a normal boy, and we believe the evidence reveals that he was above the average for his age in mentality and leadership.

■ Appellants also claim there is a conflict in the jury's answers concerning Norman Brown's contributory negligence and his failure to be aware of the existing danger and risk. We do not find any conflict in such answers of the jury. We cite again the case of Luck v. Buffalo Lakes, supra, Syl. 6, in support of our holding.

■ It seems that appellants contend that Norman Brown was granted some sort of permission to ride appellee's freight train bound for Dallas. They do not challenge the jury's answers to Special Issue No. 19, wherein the jury found in effect that Norman Brown was not advised by any of appellee's switchmen that he could catch a ride upon appellee's freight train, which finding is supported by competent evidence. Neither do appellants complain about the jury finding in answer to Special Issue No. 1, wherein it found that the act of appellee's employee, C. T. Washington, in advising Norman Brown the time that a freight train would be leaving for Dallas upon a certain track did not constitute negligence. Washington testified that he thought Norman Brown was the son or a relative of one of appellee's employees who would be leaving on the said train and for some reason wanted to see such employee before he left. He further testified that he did not give Norman Brown or anyone else permission to ride that or any other train out of appellee's yards, which testimony supports the jury finding in answer to Special Issue No. 19. Appellants and this Court are bound by such findings.

Appellants charge error because of a communication between the trial judge and one juror after the trial began and a part of the evidence had been heard and before the case had been given to the jury for its deliberation. As a result of such a communication, appellants complain because the trial court failed to declare a mistrial. The record reveals that after the trial had proceeded as previously stated and recessed overnight and before court convened the next morning, Juror F. L. Price approached the trial judge in the hall at the courthouse and told the judge that he had discovered after voir dire examination of the jury and the trial had begun that he was acquainted with one of the appellants' witnesses, namely E. L. Stewart; that on voir dire examination he was not asked whether or not he knew any of the witnesses by giving the names of such witnesses; that if he had been asked if he knew the witness, E. L. Stewart, he would have answered in the affirmative but he did not know until later that Stewart was to be a witness in the case and the juror further stated that the fact that Stewart was a witness would not have any effect on him one way or the other anyway. The trial judge reported the juror's statement to counsel for both parties and a lengthy conference was held between the lawyers in the case and the trial court in the absence of the jury, as reported in the statement of facts which is before us. It reflects that appellee's counsel moved for a mistrial because of the juror's statement made to the trial judge. Appellants' counsel protested and said, "I can't ask for a mistrial because the case has been pending a long time, the witnesses are alive today and are here and the jury can see them; they live in California, they're poor people and they can't undergo the expense of a delay * * *". A suggestion was there made to the effect that juror, F. L. Price, be excused and to try the remainder of the case by agreement before the other 11 jurors, but such agreement was not reached. Appellants' counsel suggested the probability of excusing the juror, F. L. Price, and selecting in lieu thereof, after a part of the evidence had been heard, a 12th juror to take his place, but that was not done. The juror, Price, continued to serve and nothing further was said to him about the matter in so far as the record reflects.

Before further procedure was had, however, the witness, E. L. Stewart, was called and examined in the absence of the jury about his acquaintance with the juror, Price, and testified that he had known the juror, Price, when they "were school kids together" about 1925, but he had not had any personal visit with Price in about four years; that he saw Price in the courthouse the previous day and spoke to him that afternoon as he started home and Price asked him where he had been. No showing was made of anything other than personal remarks passing between them. Stewart later testified that he was a helper on a switch engine at the Slaton railroad yard at the time in question and he gave testimony principally concerning the switching operations in the yard on the afternoon of Norman Brown's injuries.

■ It is doubtful if appellants should now be heard to complain because the trial court failed to declare a mistrial as a result of the communication of the juror, Price, with the trial court as previously shown after appellants, through their counsel, protested and opposed the granting of a mistrial by the trial court when the matters complained about occurred as reflected by the record previously herein shown. But, be that as it may, in our opinion the Supreme Court of Texas, in the recent case of Ross v. Texas Employer's Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541, has relaxed the old rules of procedure concerning an oral communication between one juror and the trial judge after the case has proceeded to trial. In a similar situation there presented, the Supreme Court held that such an oral communication did not require a reversal of the trial court's judgment unless prejudicial injury has been shown by appellant to exist, and there cites the provisions of Rules 434 and 503, Texas Rules of Civil Procedure, in support thereof. In our opinion appellants have failed to show any prejudicial injury committed in any event as a result of the charges made by them.

■ While the jury found that Norman Brown was not a trespasser and that he was not on appellee's premises for the purpose of stealing a ride on appellee's train, under the record presented and according to the provisions of Art. 1673, Penal Code, concerning the unlawful boarding of a train, we believe it has been conclusively shown that Norman Brown was on the premises for the purpose of stealing a ride on one of appellee's trains notwithstanding the jury's answer to the contrary. According to the record before us we believe that it has been conclusively established that Norman Brown was a trespasser on appellee's premises by the terms of the definition of the trial court, notwithstanding the jury's answer to the contrary. But because of our disposition of the other material matters which require an affirmance of the case, these questions will not be here further discussed.

As a result of a careful examination of the record and the briefs, we find no reversible error if in fact any error. Appellants' points to the contrary are all overruled and the judgment of the trial court is affirmed.